# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JARROD MICHAEL McDONALD,**

    **Plaintiff,**

v.

**HALLIBURTON,**

    **Defendant.**

Case No. 2:18-cv-585
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Halliburton's Motion to Compel Arbitration (ECF No. 10), Plaintiff Jarrod Michael McDonald's ("McDonald") Response in Opposition (ECF No. 16), and Halliburton's Reply. (ECF No. 19.) For the reasons set forth below, the Court **GRANTS** Halliburton's Motion to Compel Arbitration and **DISMISSES** this action.

### I.

Halliburton hired McDonald in November 2016. Applegath Declaration, ¶ 3. McDonald's most recent job title with Halliburton was ESG-Associate Tech. *Id.*

When McDonald applied for employment with Halliburton, he completed and submitted an online Employment Application. Applegath Decl. at ¶ 6. To submit his Employment Application, McDonald was required to click on a square adjacent to the phrase "I acknowledge that I have reviewed the Plan and Rules and agree." [CITE] The Plans and Rules to which McDonald agreed states:

> I agree that any dispute between Halliburton and me arising from or relating to the application process and any employment relationship that might thereafter be formed will be resolved under the Halliburton Dispute Resolution Program ("DRP"). Under the DRP, all employment disputes that are not otherwise

resolved by mutual agreement must be arbitrated under the DRP rules. I understand that this agreement is binding on me and Halliburton and that I am waiving any right to a jury trial for such disputes. Under the DRP, arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal rights, remedies or defenses of the parties. The decision of the arbitrator shall be final and binding on me and the company and may be confirmed in, and judgment upon the award entered by any court of competent jurisdiction. The DRP is herein incorporated by reference. The DRP Plan and Rules are available for review via the link included on this online application. DRP Plans and Rules.

I acknowledge that I have reviewed the Plan and Rules and agree to its terms.

Applegath Decl., ¶ 8 and Ex. A at 8–9. The DRP defines "Dispute" as:

All legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:

1. This Plan;

2. The employment or potential re-employment of an Employee, including the terms, conditions or termination of such employment with the Company;

3. Employee benefits or incidents of employment with [Halliburton];

4. Any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; wrongful discharge; worker's compensation retaliation; defamation; infliction of emotional distress; failure to pay wages; or status, claim or membership with regard to any employee benefit plan ....

Def.'s Mot. to Compel, Ex. C at 4.

After receiving McDonald's employment application, Haliburton sent McDonald an offer letter, which states in part:

Your decision to accept employment constitutes your agreement to resolve all employment related disputes with your employer by arbitration under the Halliburton Dispute Resolution Program ("DRP"). A copy of the DRP Plan and Rules may accessed at the Halliburton website at http://www.halliburton.com/pub

2

> lic/pubsdata/related_docs/DRP_Plan_Rules.pdf. Under the DRP, all employment disputes that are not otherwise resolved by mutual agreement must be arbitrated under the DRP rules. This agreement is binding on both you and the company. This agreement constitutes a waiver of your right to a jury trial. The arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal rights, remedies or defenses of the parties. The decision of the arbitrator shall be final and binding on you and the company and may be confirmed in, and judgment upon the award entered by, any court of competent jurisdiction. The DRP is herein incorporated by reference. By signing and returning this letter, you acknowledge that you have reviewed the DRP and agree to its terms.

Applegath Decl. at ¶ 11, Ex. B. Shortly after receiving the letter, McDonald began working at Halliburton. [CITE].

In April 2017, Halliburton terminated McDonald. [CITE]. On June 13, 2018, McDonald brought the instant action. Halliburton now moves the Court to enforce the arbitration provisions of the DRP, pursuant to the Federal Arbitration Act (the "Act"), and to dismiss McDonald's claims.

## II.

The Act provides that "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that [courts] rigorously enforce agreements to arbitrate …." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

The Act provides federal courts with the authority to stay lawsuits in cases where issues are referable to arbitration pursuant to written agreements calling for such arbitration, and to compel arbitration where a party to a dispute has refused to arbitrate the dispute as required by

an enforceable agreement. *See* 9 U.S.C. §§ 3–4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

"In deciding whether to compel arbitration of a federal statutory claim, [courts] first consider whether the statutory claim is generally subject to compulsory arbitration." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003). "If the claim is not exempt from arbitration, we must then consider whether the arbitration agreement is valid." *Morrison*, 317 F.3d at 665. Title VII claims may be heard in an arbitral forum; therefore, the Court must only determine whether the arbitration agreement is valid and enforceable. *Morrison*, 317 F.3d at 665–66 (citing *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309 (6th Cir. 1991)).

### III.

The validity of an arbitration agreement is determined by reference to general principles of contract law. *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996). McDonald does not directly dispute the validity of the arbitration agreement. In fact, McDonald admits he "did sign the arbitration clause along with other employment documents." Pl.'s Resp. at ¶ 2. Nonetheless, McDonald raises the affirmative defense of unconscionability.

"[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The enforceability of an arbitration agreement must be reviewed under the law of the state of contract formation.

4

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). Therefore, the Court will analyze McDonald's unconscionability claims under Ohio law.

McDonald correctly points out that, under Ohio law, "to support a finding of unconscionability, a party must offer evidence that a contract is both substantively unconscionable, meaning it contains unfair or unreasonable terms, and procedurally unconscionable, indicating that no voluntary meeting of the minds was possible." *Featherston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004-Ohio-5953, ¶ 13.

"When considering substantive unconscionability, a court should determine whether the terms of the contract are commercially unreasonable." *Id.* (citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N. E. 2d 1161, at ¶ 31). "Where the 'clauses involved are so one-sided as to oppress or unfairly surprise a party,' an arbitration clause is unconscionable." *Id.* (quoting *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311–12, 610 N. E. 2d 1089). "Outrageous contractual terms or a severe imbalance in bargaining power also support a finding of unconscionability." *Id.* (citing *Orlett v. Suburban Propane* (1989), 54 Ohio App. 3d 127, 129, 561 N. E. 2d 1066).

The party asserting the unconscionability of a contract bears the burden of proving the agreement is both procedurally and substantively unconscionable. *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N. E. 2d 408 (2009); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N. E. 2d 12 (2008). "The test of unconscionability poses a very great burden." *Ahmmad v. Ahmed*, 2015-Ohio-2537, 38 N. E. 3d 434, at ¶ 33 (2015) (quoting *Highway Equip. Co. v. Caterpillar, Inc.*, 908 F.2d 60, 65 (6th Cir. 1990)).

McDonald argues that the "arbitration clause he signed is unconscionable because the interpretation of the clause is different for both parties, therefore no agreement occurred; also, regarding the definition of a term by the Defendant in the contract, the clause is one-sided in support of the Defendant is not fair for both parties." Further, McDonald contends he "did not mindfully agree to the Defendant's interpretation because the Defendant kept their interpretation hidden. Therefore, no agreement occurred." Pl.'s Resp. at ¶ 9. These arguments lack merit.

McDonald takes issue with the definition and interpretation of the term "dispute." Yet the DRP unambiguously defines "Dispute" as, in relevant part:

> All legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan ... including but not limited to:
>
> This Plan;
>
> The employment or potential re-employment of an Employee, including the terms, conditions or termination of such employment with the Company; ....

Def.'s Mot. to Compel, Ex. C at 4. McDonald has failed to carry his heavy burden of establishing that the DRP's definition of "Dispute" is commercially unreasonable. Therefore, McDonald has failed to establish that any of the agreement's terms are substantively unconscionable.

By failing to establish the first prong of the unconscionability test, McDonald's unconscionability defense fails. The Court need not address the second prong—*i.e.*, whether the agreement was procedurally unconscionable. Although McDonald's unconscionability defense fails, the Court must still address whether Halliburton's arbitration agreement is valid and enforceable.

When McDonald applied for employment with Halliburton, he agreed to be bound by the

6

DRP during the application process and throughout his employment, if he was hired.[1] Subsequently, Halliburton sent McDonald an offer letter, which stated the terms of the offer and referenced the DRP to which McDonald had previously agreed. The arbitration provisions in the offer letter utilized the same font and size as the rest of the letter, listed the webpage to the DRP, and required McDonald to explicitly confirm that he had reviewed and accepted the agreement's terms of the agreement by clicking on a box adjacent to the confirmation, "I acknowledge that I have reviewed the Plan and Rules and agree." McDonald accepted those terms, which bound him to arbitrate all future employment-related disputes, unless certain exceptions applied.

The current dispute between Halliburton and McDonald involves an employment dispute regarding sexual harassment and employment termination. Those claims are within the scope of the parties' arbitration agreement. *See* Pl.'s Compl. at 3–4. Therefore, the arbitration agreement between McDonald and Halliburton is valid and enforceable.

### IV.

For the reasons stated above, Halliburton's Motion to Compel Arbitration (ECF No. 10) is **GRANTED**, and McDonald's Complaint (ECF No. 1) is **DISMISSED with PREJUDICE**.

**IT IS SO ORDERED.**

2-15-2019
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] "I agree that any dispute between Halliburton and me arising from or relating to the application process and any employment relationship that might thereafter be formed will be resolved under [the DRP]." Applegath Decl., ¶ 8 and Ex. A at 8–9.

7